UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE THOOS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | No. 2:14-cv-02969-AC<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act. Plaintiff's motion for summary judgment and the Commissioner's cross-motion for summary judgment are pending. For the reasons discussed below, the court will grant the Commissioner's cross-motion.

　　　　　　　　　　　　　　　　PROCEDURAL BACKGROUND

Plaintiff filed her application for SSI on June 29, 2010. Administrative Record ("AR") 31. Plaintiff's application was denied initially on June 8, 2011. Id. On January 23, 2012, a hearing was held before administrative law judge ("ALJ") Sally C. Reason. AR 31, 41. Plaintiff appeared with her attorney, Bill P. Gordon, at the hearing. AR 31. Plaintiff, Harvey L. Alpern, MD (an impartial medical expert), and June C. Hagen (an impartial vocational expert) testified at

1

the hearing.  Id.  In a decision dated June 7, 2012, the ALJ found plaintiff not disabled.  AR 41.

The ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since June 29, 2010, the application date.
>
> 2. The claimant has the following severe impairments: atrial septal defect status post surgical repair, obesity, hypertension, essential tremor, anxiety disorder, depressive disorder, and borderline intellectual functioning.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she could frequently perform postural activities; could occasionally perform fine fingering with the bilateral upper extremity due to essential tremors; and is limited to unskilled work.
>
> 5. The claimant has no past relevant work.
>
> 6. The claimant was born on March 5, 1969 and was 41 years old, which is defined as a younger individual age 18-49, on the date the application was filed.
>
> 7. The claimant has at least a high school education and is able to communicate in English.
>
> 8. Transferability of job skills is not an issue because the claimant does not have past relevant work.
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, since June 29, 2010, the date the application was filed.

AR 31–41 (citations to the Code of Federal Regulations omitted).

Plaintiff requested review of the ALJ's decision by the Appeals Council, but it denied review on June 17, 2014, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 13.

////

FACTUAL BACKGROUND

Born on March 5, 1969, plaintiff was 41 years old on the application date and 42 years old at the time of her administrative hearing. AR 40. Plaintiff has not engaged in substantial gainful activity since the application date. AR 33.

LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not

3

rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). In addition, "[t]he ALJ in a social security case has an independent ''duty to fully and fairly develop the record and to assure that the claimant's interests are considered.''" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## ANALYSIS

Plaintiff seeks summary judgment on the grounds that (1) the ALJ erred in rejecting the opinion of Dr. Rekha Tailor, MD; and (2) the ALJ erred in giving only some weight to the opinion of Dr. Edward Giaquinto, MD. The Commissioner, in turn, argues that the ALJ's findings are supported by substantial evidence and are free from legal error. For the reasons discussed below the court finds that the ALJ's decision is supported by substantial evidence. Accordingly, the court will grant the Commissioner's cross-motion for summary judgment.

A.   Medical Expert Testimony

    1.   Legal Standards

Three types of physicians may offer opinions in social security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine [d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In general, the opinion of a treating doctor is accorded more weight than the opinion of a doctor who did not treat the claimant, and the opinion of an examining doctor is, in turn, entitled to greater weight than the opinion of a nonexamining doctor. Id. (citations omitted); 20 C.F.R. § 404.1527(c)(1)(2).

An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of a treating or examining physician. Lester, 81 F.3d at 830 (citing Pitzer v. Sullivan,

4

908 F.2d 502, 506 (9th Cir. 1990)). If contradicted by another doctor, the opinion of a treating or examining physician can be rejected only for "specific and legitimate reasons" that are supported by substantial evidence in the record. Id. at 830–31 (citation and internal quotation marks omitted). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831. An ALJ, however, "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957.

        2.        Relevant Medical History

Plaintiff's first psychiatric evaluation took place on May 21, 2011, by Dr. Elmo Lee, MD. AR 401–05. Dr. Lee's evaluation listed plaintiff's chief complaints at the time as: (1) heart condition; (2) anxiety; (3) nerve damage in feet and hands; and (4) congenital heart disease. Id. Plaintiff reported that after surgery to repair a congenital heart condition in December 2004, she began experiencing symptoms of anxiety including a racing heart and mind. AR 401–02. According to plaintiff her anxiety woke her up in the middle of the night and affected her ability to focus. AR 402. Plaintiff also reported depression, insomnia, and panic attacks three to four times per week. Id. Plaintiff's medications at the time included: (1) Benazepril; (2) Hydrochlorothiazide; (3) Lopressor; (4) BuSpar; and (5) Simvastatin. Id. Plaintiff also reported taking baby Aspirin. Id. Plaintiff had one episode of psychiatric hospitalization at the time. Id. That hospitalization took place in June 2009 at Vista Del Mar Psychiatric Hospital, where she stayed for six days for depression and anxiety. Id.

Plaintiff reported being able to perform her own activities of daily living (ADL) at the time, and maintained a linear concentration, persistence, and pace throughout the interview. AR 403. Plaintiff also had an adequate rapport with Dr. Lee throughout the interview, good eye contact and grooming, and exhibited no unusual motor behaviors. Id. Plaintiff was cooperative throughout the examination, with thoughts that seemed logical, coherent, and goal oriented. Id. Plaintiff stated she was depressed and anxious, and indeed Dr. Lee observed she was visibly dysphoric. AR 404. Dr. Lee diagnosed plaintiff with: (1) mood disorder; (2) general pain

disorder; (3) history of cannabis use, in remission; and (4) moderate psychological stressors including chronic pain and financial duress. AR 404–05. Ultimately, Dr. Lee determined that plaintiff was capable of: (1) managing her own funds; (2) performing both simple and detailed tasks; (3) accepting instructions from supervisors and interacting with co-workers and the public; (4) performing work activities on a consistent basis without special or additional instruction; (5) completing a regular workday/workweek without interruptions from a psychiatric condition; and (6) dealing with the usual stress encountered in the workplace. AR 405.

Plaintiff's next mental health visit was to the Ventura Behavioral Health Clinic ("Ventura Behavioral") in July 2011, where she returned periodically until November 2011. AR 439–63, 480–86. Plaintiff reported anxiety and symptoms including depressed mood, racing thoughts, insomnia, difficulty completing tasks, fatigue, hopelessness, tearfulness, isolation, and loss of interest. AR 455. Upon mental status examination, plaintiff's mood was depressed and anxious but her speech and behavior were normal, her attitude was responsive, her affect was stable and euthymic (normal), her thought processes were linear and rational, her thought content was normal, her perceptions were normal, she was oriented in all spheres, her intellectual functioning was average, her insight and judgment were fair, her recent and remote memory were intact, and her attention was good. AR 461–62.

Dr. Jason Winston, MD, at Ventura Behavioral diagnosed plaintiff with major depressive disorder, generalized anxiety disorder, and continuous cannabis dependence. AR 451. Dr. Winston assessed a Global Assessment of Functioning (GAF) score of 51-60. Id. Dr. Winston prescribed medication, counseled plaintiff to stop using marijuana, and agreed to plaintiff's request for a therapy referral. AR 451–5. In September 2011, Dr. Winston noted that the medications were helping, plaintiff's anxiety had decreased, she was sleeping more, she had fewer panic attacks, her mood was better, and she was "very happy" that the medications were "so effective." AR 444. Although plaintiff was anxious in October 2011, she had stopped taking Paxil two days earlier; other mental status examination findings were normal: she had good insight and judgment, normal thought processes and content, tight associations, and normal affect.
////

AR 480.  In November 2011, plaintiff was sleeping better, her depression and anxiety had improved, her mood was normal, and she was doing "all right."  AR 482.[1]

On September 23, 2011, Dr. Winston completed a Mental Impairment Questionnaire.  AR 432–34.  Dr. Winston opined that plaintiff had marked limitations in her ability to work in coordination with or proximity to others without being distracted; to interact appropriately with the public; to accept instructions and respond appropriately to supervisors; to get along with co-workers; and to maintain socially appropriate behavior.  AR 433.  Dr. Winston further opined that plaintiff had moderate limitations in her ability to maintain attention and concentration for extended periods and to respond appropriately to changes in the work setting.  AR 433–34.  Finally, the doctor opined that plaintiff had only slight limitations in her ability to remember locations and work procedures; to understand, remember and carry out simple instructions; to perform activities within a schedule and maintain regular attendance; and to make simple work-related decisions.  AR 433.  Dr. Winston thought plaintiff would be absent from work more than three times a month and could not perform a full-time job.  AR 434.

On March 12, 2012, Rekha Tailor, MD, completed a Mental Impairment Questionnaire.  AR 496–98.  Dr. Tailor indicated that she began treating plaintiff in January 2012.  AR 496.  Dr. Tailor opined that plaintiff had marked limitations in her ability to remember locations and work procedures; to perform activities within a schedule and maintain regular attendance; to work in coordination with or proximity to others without being distracted; to accept instructions and respond appropriately to supervisors; to get along with co-workers; and to respond appropriately to changes in the work setting.  AR 497–98.  The doctor further opined that plaintiff had moderate limitations in her ability to maintain attention and concentration for extended periods, to interact appropriately with the public, and to maintain socially appropriate behavior.  AR 497–98.  Dr. Tailor also opined that plaintiff had slight limitations in her ability to understand, remember and carry out simple instructions, and to make simple work-related decisions.  AR 497.  Finally, Dr. Tailor opined that plaintiff could not perform a full-time job.  AR 498.

---

[1] While at Ventura Behavioral there is also evidence that plaintiff was seen by Tiffany Curtis, LMFT; Robert Mendoza, LCSW; and Dr. Rekha Tailor, MD.  AR 463, 484.

Consultative examiner Edward Giaquinto, Ph.D., performed a psychological evaluation on May 4, 2012. AR 499–507. Dr. Giaquinto noted plaintiff's grooming and hygiene were adequate but odorous, she displayed hand tremors, she was restless but cooperative, she walked without assistance, and her gait was intact. AR 499, 501. Plaintiff indicated she was unable to drive or timely complete tasks and she had difficulty lifting and carrying heavy objects, but otherwise completed her own ADLs. AR 500–01. Upon mental status examination, plaintiff reported anxiety and depression, and the doctor observed poor computational skills and moderately impaired attention and concentration. AR 501–02. Plaintiff also reported that her daily life was significantly affected by common phobias, such as fear of the dark. AR 501. In addition, Dr. Giaquinto found that plaintiff's cognitive processes indicated her attention and concentration skills were moderately impaired, although she was oriented for all spheres. Id. Dr. Giaquinto also observed, however, that plaintiff's articulation and speech quality were normal; her language comprehension was intact; she showed congruent affect; her thought content and processes were normal and without delusions or compulsions; she demonstrated good fund of information; her abstraction ability was intact; she had adequate insight; her judgment was good; she could manage money; and she made appropriate eye contact during the evaluation. AR 501–02.

With regards to plaintiff's test results, Dr. Giaquinto found that she put forth adequate effort and therefore the findings appeared to be valid. AR 502. Plaintiff's Wechsler Adult Intelligence Scale – IV (WAIS-IV) test scores were borderline for perceptual reasoning and full scale IQ, extremely low for processing speed, low average for general ability, and average for verbal comprehension and working memory. AR 502–03. Plaintiff's neurological tests indicated no impairment. AR 505. Dr. Giaquinto assessed a GAF score of 55, and indicated her prognosis was fair to good as long as she received "regular individual therapy utilizing cognitive behavioral techniques and quality medication management." Id. Dr. Giaquinto opined that plaintiff had moderate to severe limitations in performing detailed and complex tasks; accepting instructions from supervisors; interacting with co-workers and the public; working on a consistent basis without special or additional instructions; maintaining regular attendance in the workplace; completing a normal workday without interruptions; and dealing with stress in the work

1  environment. AR 506. He further opined that plaintiff could perform simple and repetitive tasks,

2  and manage her own funds. Id.

3     3.   Analysis

4  The court finds that the ALJ did not err in affording Dr. Tailor's opinion no weight, or Dr.

5  Giaquinto's opinion only some weight. Finding that Dr. Tailor's medical opinion was not entitled

6  to any weight, the ALJ stated the following:

> The undersigned has also considered the opinion of Rakha Taylor, [sic] M.D., who provided an assessment in March 2012 indicating the claimant would have moderate to marked limitations in her ability to concentrate, interact appropriately with supervisors, coworkers, and the public, respond appropriately to changes in the work setting, and maintain a regular work schedule (Exhibit 29F). The undersigned affords no weight to this opinion for the reasons set out above in relation to Dr. Winston's opinion. Furthermore, there is no evidence that Dr. Taylor [sic] ever treated or evaluated the claimant.

13  AR 39. Plaintiff argues that the ALJ erred in giving Dr. Tailor's opinion no weight because

14  simply referencing her explanation of Dr. Winston's opinion does not satisfy the Ninth Circuit's

15  specific and legitimate reason requirement.

16  A careful reading of the ALJ's reasons for discounting Dr. Winston's opinion shows they

17  also apply to Dr. Tailor's opinion. Dr. Winston treated plaintiff from July to November 2011.

18  AR 439–63, 480–86. In September 2011, Dr. Winston opined that plaintiff would have marked

19  limitations in working appropriately with others and "maintain[ing] socially appropriate

20  behavior." AR 432–34. The ALJ, however, afforded no weight to Dr. Winston's limitations in

21  social interaction because she found plaintiff's medical reports tended not to support such

22  extreme limitations. AR 39. For example, Dr. Winston consistently noted plaintiff to be

23  appropriate, "cooperative, have normal behavior, and a responsive attitude." Id. (citing AR 439–

24  63, 480–86). In addition, plaintiff reported on more than one occasion that her anxiety had

25  decreased significantly, and she was feeling better. Id.

26  Dr. Tailor opined in her March 12, 2012, mental impairment questionnaire that plaintiff

27  suffered from moderate to marked limitations in her ability to interact appropriately with others,

28  much like Dr. Winston. AR 497–98. In addition, there is evidence that both Dr. Winston and Dr.

1   Tailor treated plaintiff at Ventura Behavioral. AR 439–63, 480–86. Given the similarity of both
2   doctor's opinions the court finds the ALJ's reference to "reasons set out in relation to Dr.
3   Winston's opinion" is appropriate. The ALJ found substantial evidence of improvement in
4   plaintiff's ability to interact appropriately with others in Dr. Winston's medical reports. AR 39.
5   Those reports provide a specific and legitimate reason to discount not only Dr. Winston's
6   opinion, but Dr. Tailor's opinion as well. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d
7   595, 601 (9th Cir. 1999) (holding that medical reports showing improvements in a claimant's
8   condition can constitute substantial evidence where they conflict with a treating physician's
9   opinion, especially where that opinion relies on subjective reports from a claimant who is found
10  not to be credible); see also Andrews v. Shalala, 53 F.3d 1035, 1039–40 (9th Cir. 1995) ("We
11  must uphold the ALJ's decision where the evidence is susceptible to more than one rational
12  interpretation.").[2]

13  The ALJ's decision to afford parts of Dr. Giaquinto's opinion only some weight is also
14  supported by specific and legitimate reasons. Finding that Dr. Giaquinto's opinion was entitled to
15  some weight, the ALJ stated the following:

> Finally, the undersigned has considered the opinion of the posthearing psychological examiner, Edward Giaquinto, Pd.D., who evaluated the claimant in May 2012. Specifically, Dr. Giaquinto found the claimant capable of performing simple and repetitive tasks; however, she would have moderate to severe impairments in her ability to perform detailed and complex tasks, accept instructions from supervisors, maintain regular attendance, complete a normal workday and workweek, and deal with stress in the work environment (Exhibit 30F/8). While some weight has been afforded to this opinion, the undersigned finds that the claimant's symptoms do not reach the level of severity as opined by Dr. Giaquinto. This finding is based on the mental status examination and psychometric testing results. For example, the claimant exhibited an anxious mood, normal speech quality, congruent affect, moderate deficits in concentration, intact immediate and recent memory, normal thought content and processes, intact abstract ability, and adequate insight and judgment. While the claimant apparently testing in the borderline intellectual function range on WAIS-IV testing, she previously reported that she "was

---

[2] It is unclear whether Dr. Tailor constitutes a treating or examining physician here. Regardless, however, the ALJ was required to provide specific and legitimate reasons because Dr. Tailor's opinion was contradicted by Dr. Lee. See AR 405 (finding that plaintiff is capable of taking direction from a supervisor and interacting appropriately with others); Lester, 81 F.3d at 830–31.

>
> very bright and had skipped a grade" (Exhibit 22F/21). With respect to the claimant's extrem ely low memory testing, the undersigned finds that a limitation to unskilled work is consistent with all of the above evidence.

AR 39–40. Plaintiff argues that the ALJ erred in giving Dr. Giaquinto's opinion only *some* weight, because the fact that plaintiff reported she was very bright as a child and skipped a grade does not negate her testing within the borderline intellectual function range.

The problem with this argument, however, is that the ALJ did not reject Dr. Giaquinto's finding that plaintiff's test results indicated borderline intellectual functioning. See AR 33 (finding that plaintiff's severe impairments include borderline intellectual functioning). Nor does the fact that plaintiff reported being bright as a child seem to be the main reason the ALJ afforded Dr. Giaquinto's opinion some weight. Instead, the ALJ based her decision to afford the opinion some weight on "the mental status examination and psychometric testing results," including the fact that plaintiff had "normal speech quality, congruent affect, moderate deficits in concentration, intact immediate and recent memory, normal thought content and processes, intact abstract ability, and adequate insight and judgment." AR 39–40. Based on those observations, the ALJ concluded that the claimant's symptoms "do not reach the level of severity as opined by Dr. Giaquinto." AR 39. In other words, the ALJ found that the limitations assessed by Dr. Giaquinto were not entirely supported by his test results.

Plaintiff's motion does not explain why these examination results are insufficient to qualify as substantial evidence. Indeed, in light of medical records like Dr. Winston's discussed by the ALJ earlier in her decision, the court finds these portions of the examination *are* substantial evidence. Accordingly, the court finds the ALJ has articulated specific and legitimate reasons for affording Dr. Giaquinto's opinion only some weight.[3] In accordance with the foregoing, the court finds that the ALJ did not err and it will grant the Commissioner's cross-motion for summary judgment.

---

[3] The ALJ was also required to provide specific and legitimate reasons to discount Dr. Giaquinto's opinion, which was contradicted by Dr. Lee's assessment. See AR 405 (finding that plaintiff is capable of interacting appropriately with others and dealing with the usual stress encountered in the workplace).

11

CONCLUSION

In light of the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 16, is DENIED;

2. The Commissioner's cross-motion for summary judgment, ECF No. 26, is GRANTED; and

3. The Clerk of the Court is directed to close this case.

DATED: March 29, 2016

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE